Page 1

18 F.3d 1449, 62 USLW 2596, Fed. Sec. L. Rep. P 98,115, 28 Fed.R.Serv.3d 680
**(Cite as: 18 F.3d 1449)**

United States Court of Appeals,
Ninth Circuit.
Joy SILBER, on behalf of herself and all others similarly situated, Plaintiff-Appellee,
Arthur P. Argyris, Class Member, Plaintiff-Appellant,
v.
Stuart P. MABON; Dundas I. Flaherty; Eugene F. Hovanec; Ericson M. Dustan; Edwin P. Heacox; and Micropolis Corporation, Defendants-Appellees.
**No. 92-56004.**

Argued and Submitted Feb. 3, 1994.
Decided March 15, 1994.

Class member appealed from order of the United States District Court for the Central District of California, Robert C. Bonner, J., which denied untimely motion to opt out of settlement from securities action. The Court of Appeals, 957 F.2d 697, Sneed, Circuit Judge, reversed and remanded. On remand, the District Court, A. Wallace Tashima, J., refused to allow member to opt out late, approved settlement, and entered judgment. Member appealed. The Court of Appeals, Rymer, Circuit Judge, held that: (1) best notice practicable, rather than actual notice, is standard for evaluating adequacy of opt-out notice; (2) publication plus actual notice to beneficial owners through brokerage houses was best practicable notice; but (3) published notice alone was not sufficient basis for denying class member's motion to extend opt-out period.

Affirmed in part and remanded in part.

West Headnotes

**[1] Federal Courts 170B ⚖︎776**

170B Federal Courts
   170BVIII Courts of Appeals
      170BVIII(K) Scope, Standards, and Extent
         170BVIII(K)1 In General
            170Bk776 k. Trial De Novo. Most Cited Cases
District court's ruling regarding notice to class is reviewed de novo. Fed.Rules Civ.Proc.Rule 23(b)(3), (c)(2), 28 U.S.C.A.

**[2] Federal Courts 170B ⚖︎817**

170B Federal Courts
   170BVIII Courts of Appeals
      170BVIII(K) Scope, Standards, and Extent
         170BVIII(K)4 Discretion of Lower Court
            170Bk817 k. Parties; Pleading. Most Cited Cases
Denial of motion to opt out of class is reviewed for abuse of discretion. Fed.Rules Civ.Proc.Rule 23(c)(2), 28 U.S.C.A.

**[3] Compromise and Settlement 89 ⚖︎69**

89 Compromise and Settlement
   89II Judicial Approval
      89k66 Proceedings
         89k69 k. Hearing. Most Cited Cases
Investor who did not receive notice of proposed settlement in securities class action suit until after opt-out date had passed was not entitled to continuance of hearing seeking approval of settlement; investor would still be bound unless opt-out deadline were also extended. Fed.Rules Civ.Proc.Rules 6, 23, 60, 28 U.S.C.A.

**[4] Compromise and Settlement 89 ⚖︎68**

89 Compromise and Settlement
   89II Judicial Approval
      89k66 Proceedings
         89k68 k. Notice and Communications. Most Cited Cases

**Constitutional Law 92 ⚖︎3983**

92 Constitutional Law
   92XXVII Due Process
      92XXVII(E) Civil Actions and Proceedings

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

      92k3980 Class Actions
          92k3983 k. Compromise and Settlement. Most Cited Cases
  (Formerly 92k309(1.5))

Best notice practicable, rather than actual notice, is proper standard for providing notice of proposed settlement to absent class members and, thus, publication combined with notice of settlement in securities class action to broker, which held stock for investor in its street name did not violate due process, even though investor did not receive actual notice until opt-out period had expired. Fed.Rules Civ.Proc.Rules 6, 23, 23(b)(3), 60, 28 U.S.C.A.; U.S.C.A. Const.Amends. 5, 14.

**[5] Compromise and Settlement 89 ⇐68**

89 Compromise and Settlement
   89II Judicial Approval
      89k66 Proceedings
         89k68 k. Notice and Communications. Most Cited Cases

**Constitutional Law 92 ⇐3983**

92 Constitutional Law
   92XXVII Due Process
      92XXVII(E) Civil Actions and Proceedings
         92k3980 Class Actions
            92k3983 k. Compromise and Settlement. Most Cited Cases
  (Formerly 92k309(1.5))

Publication of notice of proposed class settlement alone did not justify denial of request for extension of opt-out period by absent class member who did not receive actual notice until after opt-out period had expired; due process required consideration of degree of compliance with best practicable notice procedures, when notice was actually received, why notice was not timely received, what caused delay, whose responsibility delay was, how quickly belated opt-out request was made once notice was received, how many class members want to opt out, and whether allowing belated opt out would affect either settlement or finality of judgment. Fed.Rules Civ.Proc.Rules 6(b)(2), 23, 23(b)(3), 60(b)(6), 28 U.S.C.A.; U.S.C.A. Const.Amends. 5, 14.

**\*1450** Lionel Z. Glancy, Santa Monica, CA, for plaintiff-appellant.

Herbert E. Milstein, Cohen, Milstein, Hausfeld & Toll, Washington, DC (argued), and Michael S. Glassman, Clemens, Glassman and Clemens, Los Angeles, CA (signed the briefs), for plaintiff-appellee Joy Silber.

William J. Meeske and Jennifer Upham Saunders, Latham & Watkins, Los Angeles, CA, for defendants-appellees.

Appeal from the United States District Court for the Central District of California.

Before: SNEED, THOMPSON, and RYMER, Circuit Judges.

RYMER, Circuit Judge:

Arthur P. Argyris was an absent member of a securities class action whose stock in Micropolis Corporation was held in street name by PaineWebber, Inc., his broker. He did not receive notice that he would be bound by a class action settlement until after the opt out date had passed. Neither the class representative, Joy Silber, nor the defendant, Micropolis Corporation, was to blame. The **\*1451** district court approved the settlement and entered judgment.

Argyris appealed, arguing that the notice procedures approved by the district court violated his due process rights, and that the court in any event erred by refusing to allow him to opt out late. In *Silber I,* we remanded for the district court to determine if the notice given was the "best practicable" even though the named representative did not offer to reimburse the brokerage houses for search and handling costs associated with forwarding notice as required by *In re Victor Technologies Securities Litigation,* 792 F.2d 862 (9th Cir.1986). *Silber v. Mabon,* 957 F.2d 697 (9th Cir.1992). On remand, Judge Tashima found that the brokerage community

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

had conformed its practice to *Victor Technologies,* that PaineWebber forwarded notices without having to be told that it would be reimbursed, that its forwarding costs were minimal, and that the notice was the "best practicable." Argyris does not challenge these "technological" findings on this appeal.

In light of the remand, *Silber I* did not reach Argyris's argument that *Phillips Petroleum Co. v. Shutts,* 472 U.S. 797, 105 S.Ct. 2965, 86 L.Ed.2d 628 (1985), renders even the procedures approved in *Victor Technologies* unconstitutional unless there is actual receipt of notice. That is the issue we must now confront. We hold that Argyris's due process rights were not violated even though he did not actually receive notice of the settlement and opt out date in time to opt out before the deadline. However, we again remand because the record is insufficient for us to determine whether the district court abused its discretion by refusing to allow Argyris to opt out late, after the deadline had passed but before the settlement had been approved.[FN1]

> FN1. This case followed a tortuous route through the district court. After Judge Bonner approved the notice procedures, it was transferred to the calendar of Chief Judge Real, who approved the settlement and declined to permit Argyris to opt out late. The matter was then assigned to Judge Letts, who heard and denied a motion to reconsider. After remand, it was transferred again, to Judge Tashima. Judge Tashima determined the issue on which remand was ordered.

I

In January 1989, Silber filed a class action complaint pursuant to Fed.R.Civ.P. 23(b)(3) against Micropolis and certain of its officers and directors, alleging securities fraud, common law fraud, and negligent misrepresentation. On July 11, 1990, Silber and Micropolis filed a stipulation of settlement and a consent order setting out the content of notices to be sent and published to class members, along with the procedures to be used for their distribution and publication.

Under the order, long form notices were to be mailed first class to all "identified class members" at least sixty days prior to the October 15, 1990 hearing on the fairness of the settlement and forty days before the opt out deadline, September 25, 1990.[FN2] For nominee accounts, the order provided that:

> FN2. Pursuant to Rule 23(c)(2), an absent class member must be given notice of his right to opt out of the class and to pursue his claim individually. The opt out deadline is the date by which the putative member of the class must instruct the class representative that he or she does not want to be a part of the class.

> [u]pon request, Class Counsel or the Administrator shall send to nominees ... additional copies of the mailed notice for forwarding to customers and clients who were beneficial purchasers. Alternatively, such nominees may submit a list of the names and addresses of such beneficial purchasers, in which case Class Counsel or the Administrator shall immediately forward the mailed Notice and Claim form to the beneficial purchasers.

The parties also agreed that a summary notice would be published in the *Wall Street Journal* and the *Los Angeles Times*. It stated the date of the hearing and warned that "details of other significant matters" were contained in the long form notice which could be obtained by contacting the administrator whose address and phone number were listed. The notice was to be published fifty-five days before the hearing and thirty-five days before the opt out deadline.

*1452 On July 20, 1990, Judge Bonner signed the consent order, finding that the proposed notice pro-

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

cedures were "the best notice practicable under the circumstances ... and are sufficient to comply with the requirements of FRCP 23(c)(2) and due process."

On August 15, 1990, long form notices were sent to all 1,001 owners of Micropolis stock who were listed in Micropolis's own records. That same day, 288 brokerages, banks, and other nominees were sent notices and were asked either to mail the notices to beneficial owners or to provide the administrator with a list of the beneficial owners. The summary notice was published in the *Journal* and the *Times* five days later. By September 19, 1990, over 5,000 more long form notices were sent out by the administrator to people who had read the summary notice, institutions which forwarded them for distribution, or beneficial owners based on names supplied by the institutions.

On August 15, the claims administrator sent a notice to PaineWebber, who was the nominee for Argyris's Micropolis stock. A month later, on September 17, PaineWebber requested 1000 more copies of the notice which were sent to its Weehawken, New Jersey office on September 25, 1990-the opt out deadline. These notices were then shipped to shareholders, including Argyris, on October 4, 1990.

Argyris received his notice sometime after October 4 and well after the opt out deadline. On October 12, 1990, three days before the fairness hearing, Argyris filed a "Motion to be Excluded from the Settlement Class."

On October 15, 1990, Chief Judge Real declined Argyris's request to opt out on the basis that he did not receive adequate notice. Argyris argued that he had been denied due process because the notice given to absent class members was deficient, but the court found that the notice procedures were the "best notice practicable under the circumstances" and that plaintiff's counsel had fully complied with the consent order. In passing, Chief Judge Real stated that Argyris's failure to receive timely notice was due to PaineWebber's inaction rather than any failure by the parties. On October 24, 1990, the court entered a Final Judgment of Dismissal with Prejudice which approved the settlement, dismissed the case, and permanently enjoined all class members who did not opt out from filing an action against any defendants based on any claim relinquished in the settlement.

Argyris moved for reconsideration based in part on a declaration by an administrative assistant at PaineWebber which stated that she did not receive the notice until September 5, 1990. Silber responded with an affidavit by an employee of the notice administrator which indicated that notice had been mailed to PaineWebber by first class mail on August 15, 1990. Judge Letts denied the motion for reconsideration.

On remand from *Silber I,* Judge Tashima found that the current practice in the brokerage industry is to request reimbursement for search and mailing costs after complying with the notice procedures; thus the "industry has incorporated into its business practices the requirements of *In re Victor Technologies Securities Litigation* and complies with notice procedures in class actions on the understanding that search and mailing costs will be reimbursed once they have been determined." The court found that PaineWebber complied with current industry practice by following the notice procedures and then seeking reimbursement. It found that the delay was not caused by a failure by the class representative to offer to pay the search costs in advance and that the search costs involved were insignificant. The court concluded that actual notice is not necessary so that the notice given was the "best practicable."

The district court also found that Argyris failed to present sufficient grounds to opt out of the class or the settlement under Fed.R.Civ.P. 6, 23, or 60 and was therefore bound by the judgment. Given the posture of the case before it, the court treated Argyris's request for a late opt out as a motion to reconsider Chief Judge Real's ruling, and declined to do so because no new facts had been adduced

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

since that ruling and Judge Letts's order declining to reconsider it.

**\*1453** II

[1][2] We review the district court's ruling regarding notice to the class de novo. *Victor Technologies,* 792 F.2d at 864. Denial of Argyris's motion to opt out of the class is reviewed for abuse of discretion. *In re Gypsum Antitrust Cases,* 565 F.2d 1123, 1128 (9th Cir.1977).

III

A

Silber and Micropolis first submit that we should decide only whether Judge Tashima's ruling on the *Victor Technologies* issue is correct, as that is the only issue on which we previously remanded. We disagree. Our earlier opinion expressly reserved the two arguments Argyris renews here: whether *Shutts* "renders even the procedures approved in *Victor Technologies* unconstitutional unless there is actual receipt of notice," *Silber I,* 957 F.2d at 702; and whether the district court abused its discretion in not allowing Argyris to opt out belatedly. *Id.* at 698. The law of the case doctrine does not preclude us from deciding these issues because they were not "decided either expressly or by necessary implication in the previous disposition." *Thomas v. Bible,* 983 F.2d 152, 154 (9th Cir.) (alteration and quotation marks omitted), *cert. denied,* 508 U.S. 951, 113 S.Ct. 2443, 124 L.Ed.2d 661 (1993).

B

Argyris argues that the district court's approval of the class action settlement, and denial of his request to opt out, deprived him of his due process right to opt out of the class action settlement. Because he did not actually receive notice until it was too late to opt out, Argyris contends that the court should have continued the approval hearing to assure that proper notice was given, that it was error to rely on notice by publication as the "best practicable notice," and that the court should not have found that PaineWebber was at fault.

[3] We can resolve these arguments summarily. First, continuing the hearing would not have altered the fact that the opt out deadline passed before Argyris received the notice. Failing to continue the hearing was not an abuse of discretion because Argyris would still be bound unless the opt out deadline were also extended. Second, even though it would be error to rely solely on notice by publication, this is not what the district court did. Rather, it said that the mailing of over six thousand long form notices as well as publication constituted the "best notice practicable." Finally, while Chief Judge Real did comment that Argyris "has got a problem with his broker" and "may have a lawsuit against his broker," nothing in his order suggests that it was based on relieving Silber of the responsibility of notifying the members of the class.

[4] The more difficult question Argyris poses is whether *Shutts* requires that notice actually be received in order to afford an absent class member the opportunity to opt out. Argyris argues that since he did not actually receive the notice, even though it may otherwise have been the "best practicable," he had no chance to opt out and that depriving him of the right to opt out denied him due process. Silber and Micropolis, on the other hand, contend that *Shutts* does not hold that the due process right to opt out requires actual notice. Instead, they argue, the "best practicable" notice as interpreted in *Victor Technologies* remains the appropriate standard in street name cases.

*Shutts* involved a multi-state class action brought in state court. The defendant contended that the "opt out" procedure provided by Kansas was not good enough, but that an "opt in" procedure was instead required to satisfy due process. The issue before the Court was whether a state could exercise jurisdiction over the claim of an absent, non-resident class

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

action plaintiff who lacked sufficient minimum contacts with the forum to support personal jurisdiction over the defendant. In that context, the Court stated:

> If the forum State wishes to bind an absent plaintiff concerning a claim for money damages or similar relief at law, it must provide minimal procedural due process protection. The plaintiff must receive notice plus an opportunity to be heard and participate in the litigation, whether in **\*1454** person or through counsel. The notice must be the best practicable, "reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Mullane* [*v. Central Hanover Bank & Trust Co.,* 339 U.S. 306, 314, 70 S.Ct. 652, 657, 94 L.Ed. 865 (1950) ]; cf. *Eisen v. Carlisle & Jacquelin,* 417 U.S. 156, 174-175 [94 S.Ct. 2140, 2151, 40 L.Ed.2d 732] (1974). The notice should describe the action and the plaintiffs' rights in it. Additionally, we hold that due process requires at a minimum that an absent plaintiff be provided with an opportunity to remove himself from the class by executing and returning an "opt out" or "request for exclusion" form to the court.

472 U.S. at 811-12, 105 S.Ct. at 2974 (footnote omitted). The Court concluded that Kansas's "opt out" procedure was not pro forma and that the state therefore properly asserted personal jurisdiction over the absent plaintiffs and their claims against the defendant.

We do not believe that *Shutts* changes the traditional standard for class notice from "best practicable" to "actually received" notice. No Rule 23(b)(3) case has so construed *Shutts.*[FN3] *Shutts* was concerned with the different problem of implied consent to jurisdiction when a class member fails to opt out of the class. Even so, the notice obligation was defined by reference to *Mullane* and *Eisen,* neither of which requires actual receipt.

> FN3. Most post-*Shutts* opinions dealing with the constitutionality of class-notice procedures under Rule 23 fail to mention it, and all continue to uphold the validity of the notice procedures at issue here. For example, we applied the traditional standard under *Mullane* and *Eisen* in *Victor Technologies,* 792 F.2d at 866, where we held that the district court properly required the class plaintiffs to pay forwarding costs in advance in order to ensure actual notification to beneficial holders. Several other courts have, explicitly or implicitly, approved of the method of notice at issue here. *See Blum v. BankAtlantic Fin. Corp.,* 925 F.2d 1357 (11th Cir.1991) (implicitly approving similar method; no mention of *Shutts* ); *Mashburn v. National Healthcare, Inc.,* 684 F.Supp. 660, 666-67 (M.D.Ala.1988) (explicitly approving of same procedure; no mention of *Shutts* ); *Stoller v. Baldwin-United Corp.,* 650 F.Supp. 341, 343-44 (S.D.Ohio 1986) (same).

Nor do we read *Brown v. Ticor Title Insurance Co.,* 982 F.2d 386 (9th Cir.1992), *cert. granted,* 510 U.S. 810, 114 S.Ct. 56, 26 L.Ed.2d 26 (1993), as Argyris does, to hold that an opt out notice must actually be received to provide an opportunity to opt out for purposes of due process. Relying on *Shutts,* we held in *Brown* that a judgment for injunctive relief in a class action certified under Rules 23(b)(1) and (b)(2), which do not provide for the right to opt out, could not constitutionally bar an absent but known class member's subsequent suit for money damages. *Brown* is distinguishable because Rule 23(b)(3), under which the Silber class was certified, requires that opt outs be allowed and, unlike *Brown,* Argyris chose to hold his stock in street name and was therefore not known to Silber or Micropolis. As there was no opt out notice of any sort in *Brown,* the "best notice practicable" was not given; here it was.

We therefore conclude that the appropriate question

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

remains, as we put it in *Victor Technologies,* "what notice is reasonably certain to inform the absent members of the plaintiff class," 792 F.2d at 865, and the appropriate standard is the "best notice practicable" under *Eisen* and *Mullane.* While Argyris was fortuitously unable to exercise his right to opt out in a timely fashion, that fact alone does not mean that the best practicable notice under the circumstances was not given to absent class members. As the procedures in this case for notice to beneficial owners through brokerage houses conformed to *Victor Technologies,* we affirm the judgment.

IV

Argyris's argument that the district court abused its discretion in denying his request to opt out of the class belatedly is more compelling. He points out that the Federal Rules permit a district court to extend an opt out period or grant relief from a judgment, *see, e.g.,* Fed.R.Civ.P. 6(b)(2), 23, 60(b)(6), and that the Ninth Circuit has recognized that the district court has discretion to extend a class member's time to opt out. *See Gypsum,* 565 F.2d at 1128. Micropolis argues **\*1455** that the district court did not abuse its discretion because the notice given was the "best notice practicable." In addition, it urges that the need for finality counsels against granting a motion such as Argyris's or else, Micropolis submits, defendants would be reluctant to settle class action suits.

We will only find an abuse of discretion when we have "a definite and firm conviction that the court below committed a clear error of judgment in the conclusion it reached upon weighing of the relevant factors." *United States v. Plainbull,* 957 F.2d 724, 725 (9th Cir.1992). This includes when the district court fails to apply the correct law, *id.,* or when the record contains no evidence to support its decision. *MGIC Indem. Corp. v. Moore,* 952 F.2d 1120, 1122 (9th Cir.1991). "The scope of appellate review of the district court's disallowance of a late claim is narrow. In reviewing the court's exercise of its discretion, we are not to substitute our ideas of fairness for those of the district judge in the absence of evidence that he acted arbitrarily, and such evidence must constitute a 'clear showing' of abuse of discretion." *Gypsum,* 565 F.2d at 1128 (citation and quotation marks omitted).

[5] On the basis of what the record does show, we cannot conclude as a matter of law that there was no abuse of discretion. The only ground stated by Chief Judge Real for denying Argyris's motion to be excluded was that he should have seen the published notice in the *Wall Street Journal.* The order cannot be upheld on this reason alone because the court cannot simply rely on notice by publication. *Cf. Mullane,* 339 U.S. at 319, 70 S.Ct. at 659. Nor can we say, without more, that a belated opt out is never allowed so long as the notice given was the "best practicable." *Gypsum* says otherwise. 565 F.2d at 1125, 1128. Unless that were so, Rules 6(b)(2) and 60(b)(1) would be meaningless in a case such as this. Further, to allow Argyris to opt out in the circumstances of this case would not upset Micropolis's finality interest, as no judgment had yet been entered.

Finally, it is unclear if the district court considered whether there was "excusable neglect" or good cause for the belated request such that Rules 6(b)(2) or 60(b)(1) are implicated. *See, e.g., In re Four Seasons Sec. Laws Litig.,* 493 F.2d 1288, 1290 (10th Cir.1974) (requiring demonstration of good faith and reasonable basis for not complying within specified period). Argyris filed his "Motion to be Excluded from the Settlement Class" eight days after the notice left PaineWebber's office in New Jersey and three days before the fairness hearing, and he appeared at the hearing and asked the court to allow him to opt out on the basis that he did not receive adequate notice. This was nine days before the settlement was approved. The settlement allowed for a certain percentage of opt outs, and Argyris could have opted out without triggering its limit. Given these facts, we cannot say the court's discretion could not meaningfully be informed by

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

such things as the degree of compliance with the best practicable notice procedures; when notice was actually received and if not timely received, why not; what caused the delay, and whose responsibility was it; how quickly the belated opt out request was made once notice was received;[FN4] how many class members want to opt out; and whether allowing a belated opt out would affect either the settlement or finality of the judgment. We accordingly remand to give the district court an opportunity to exercise its discretion upon consideration of these or other relevant factors.

> FN4. *Compare Capstar Corp. v. Pristine Indus., Inc.,* 768 F.Supp. 518, 521-22 (W.D.N.C.1991) (Rule 60(b) relief given from default judgment because defendant spent a lot of energy/resources responding to complaint once it learned it existed) and *Mars Steel Corp. v. Continental Ill. Nat'l Bank & Trust Co. of Chicago,* 120 F.R.D. 51 (N.D.Ill.1988) (Rule 6(b)(2) motion granted where movants never received notice; "excusable neglect" found) *with In re VMS Sec. Litig.,* 145 F.R.D. 458, 462-63 (N.D.Ill.1992) (no "excusable neglect" found where class member received notice ten days prior to opt out deadline but did not return form in time).

Each party shall bear its own costs.

AFFIRMED IN PART AND REMANDED IN PART.

C.A.9 (Cal.),1994.
Silber v. Mabon
18 F.3d 1449, 62 USLW 2596, Fed. Sec. L. Rep. P 98,115, 28 Fed.R.Serv.3d 680

END OF DOCUMENT

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.